IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

THOMAS EUGENE GOODNIGHT          §

v.                               §          CIVIL ACTION NO. 6:13cv96

RAINS COUNTY SHERIFF'S           §
DEPARTMENT, ET AL.

<u>MEMORANDUM OPINION AND ORDER OF DISMISSAL</u>

The Plaintiff Thomas Goodnight, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). The named Defendants are the Rains County Sheriff's Department and sheriff's deputies D'Lyn Davis, Charles Dickerson, Kurt Fischer, and Randy Kirkpatrick; of these, the Sheriff's Department has been dismissed.

<u>Goodnight's Complaints</u>

In his original complaint, Goodnight stated that on March 5, 2011, and September 30, 2011, Dickerson "violated my 4th, 8th, and 14th Amendment, with arrest warrants." He adds that on March 7, 2011, Davis "violated my 4th, 8th, and 14th Amendments with force registration."

Goodnight was ordered to amend his complaint to state more specific facts, which he did on February 7, 2013. In his amended complaint, Goodnight states that on March 5, 2011, Davis issued arrest warrant no. 891EX11 against Goodnight for failure to register as a sex offender. The warrant was executed by Dickerson that same day.

On March 7, 2011, Davis made Goodnight register as a sex offender even though he told her that he was no longer required to do so. He brought Davis an email from Lt. Robert Hanna in the Indianapolis Police Department stating that he was no longer required to register as of July 1, 2008, but she called him a liar and made him register anyway.

On September 30, 2011, Goodnight states that he was arrested a second time on warrant no. 891EX11 for failure to register as a sex offender, even though he had registered.  Goodnight's wife Mary had to go to the county attorney's office to have them fax a letter to the jail to have Goodnight released; he says that "no one in the sheriff's department knew what to do."

On July 8, 2013, Goodnight filed a second amended complaint.  In this second amended complaint, Goodnight says that in February of 2011, Kurt Fischer "did not properly investigate plaintiff" and "brought about an arrest warrant."  On March 5 and again in September of 2011, Randy Kirkpatrick told Dickerson about the warrant and without conducting any further investigation, Dickerson arrested Goodnight both times on the same warrant.

Goodnight goes on to state that on March 7, 2011, Davis violated his rights by forcing him to register as a sex offender without investigating.  For relief, Goodnight seeks $750,000.00.

The Defendants' Motion for Summary Judgment

The Defendants have answered the lawsuit and filed a motion for summary judgment.  In this motion, the Defendants argue that they acted in good faith and are entitled to qualified immunity as well as immunity under state law for good faith conduct under the Texas Sex Offender Registration Act.  The Defendants further assert that Dickerson has absolute immunity because his only involvement was in executing warrants issued by the justice of the peace and the claims against Fischer are barred by the statute of limitations.

The Defendants state that on February 21, 2011, D'Lyn Davis, the Rains County sex offender registrar, was notified by a person named Sherry Burns, an employee of Emory Manor Apartments, that an individual named Thomas Goodnight was living in Rains County and had not registered as a sex offender as he was required to do.  Burns told Davis that Goodnight's wife had applied for government housing and on the application, she indicated that neither she nor anyone who would be living in the house had ever been arrested or convicted as a sex offender.  The housing application was denied because the criminal check came back showing that Goodnight was a registered sex offender in Florida and had not registered in Texas as required.

The Defendants state that Davis conducted an investigation and learned that Goodnight had been registered as a sex offender in Florida but this registration had expired in July of 2010. He had informed Florida officials that he was planning to move to Indiana. Davis discovered that Goodnight had registered in Indianapolis as a sex offender but that the registration had been inactive since December of 2009. Instead of moving to Indiana as he had told the Florida officials he intended to do, Goodnight actually moved to Texas.

At this point, Davis turned the investigation over to the Rains County Sheriff's Department, and Deputy Kurt Fischer continued with the investigation. Fischer checked the information listed on the government housing application and found two vehicles registered to the Goodnights. He reviewed the drivers license records and discovered that Goodnight had moved to Rains County on February 8, 2011, and had seven days from that time to register as a sex offender.

According to the Defendants, the only way that a person who has been registered in another state can live in Texas without registering as a sex offender in Texas is if the mandatory registration requirement has been removed. Goodnight did not meet the requirements for removal of the mandatory registration requirement, which are (1) being registered for 25 years and (2) petitioning the court to have the registration requirement removed. Because Goodnight had not completed any of these requirements, on March 3, 2011, Fischer presented an affidavit of probable cause to the justice of the peace for an arrest warrant to be issued for Goodnight. The warrant for Goodnight's arrest was issued that day for failure to comply with sex offender registration requirements.

On March 5, 2011, deputy Charles Dickerson was notified of the warrant. Sgt. Randy Kirkpatrick told Dickerson of the address where Goodnight could be located, and the arrest was made. Dickerson booked Goodnight into the Rains County Jail.

Two days later, Goodnight came to Davis's office to register as a sex offender. The Texas Department of Public Safety is responsible for determining whether an out of state offense is substantially similar to a Texas offense requiring registration, and the Department provides resources to local agencies to assist in this determination. Davis discovered from a U.S. Department of Justice

report that Goodnight had been convicted of Sexual Misconduct with a Minor (Felony B) in Indiana. Information provided to Davis by the Department of Public Safety indicated that the Indiana offense of Sexual Misconduct with a Minor (Felony B) is similar to the Texas offense of Sexual Assault of a Child, which requires lifetime registration in Texas. Goodnight completed the paperwork indicating this and signed and initialed that he understood his registration duties in Texas. After the March 2011 arrest, Dickerson was never told of anything related to Goodnight's case, including his bond, bail, or results from the grand jury.

On September 30, 2011, Dickerson was informed by Kirkpatrick that there was another warrant issued for Goodnight's arrest on charges of failure to register. Dickerson believed that this was a new warrant. At the time of arrest, Goodnight showed Dickerson paperwork from Indiana concerning a registration requirement in Indiana, but did not show him any paperwork from Texas. Dickerson executed the warrant and placed Goodnight in the Rains County Jail. The sheriff's department was later informed that Goodnight had been no-billed and he was released from jail on the same date that he was arrested.

The Defendants argue that an arrest violates the Fourth Amendment if made without probable cause, but that if the plaintiff cannot demonstrate that probable cause was lacking, he cannot recover under 42 U.S.C. §1983. They state that probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. In addition, the Defendants argue that the police officers acted reasonably and are therefore entitled to immunity.

In this regard, the Defendants state that Davis, the sex offender registrar for Rains County, was contacted by Sherry Burns, an employee of Emory Manor Apartments, who said that she had learned through a background check that Goodnight was a registered sex offender in Florida who had not registered in Texas. Davis contacted officials in Florida and Indiana to investigate Goodnight's registration history and turned the information over to Deputy Kurt Fischer.

Davis states that she first saw Goodnight when he came to her office to register on March 7, 2011. She learned from a U.S. Department of Justice report that Goodnight had been convicted of Sexual Misconduct with a Minor (Felony B) in Indiana, and information provided by the Texas Department of Public Safety showed that this offense was substantially similar to the Texas offense of Sexual Assault of a Child, which requires lifetime registration. Goodnight completed the paperwork indicating that he understood this, and updated his registration again on March 8, 2012, and September 6, 2012.

Dickerson states that on March 5, 2011, he was informed of an arrest warrant for Goodnight on charges of failure to register. Sgt. Kirkpatrick told him of the address where Goodnight could be located, and Dickerson arrested Goodnight around midnight that day. He booked Goodnight into jail and completed the bottom portion of the arrest warrant. After this arrest, Dickerson was never informed of anything related to Goodnight's case, including his bond, his bail, or what action the grand jury took.

On September 30, 2011, Dickerson was told by Kirkpatrick that there was another warrant out for Goodnight's arrest for failure to register. Dickerson believed this to be a new warrant on separate charges. When he made the arrest, Goodnight showed him paperwork from Indiana, but nothing from Texas. Dickerson states that as he was commanded to do by the warrant, he placed Goodnight under arrest, booked him into jail, and completed the bottom portion of the warrant.

Dickerson states that according to Goodnight's file, the March arrest was carried out on a copy of the warrant and the September arrest was executed on the original. He says that it is not clear why both the original and a copy were put in the active warrant file, and notes that if a warrant remains in the active file and a previous warrant has been closed out of the system, a dispatcher entering the new warrant will not get notice that the person has previously been arrested on the same warrant number.

Thus, even though the September arrest was made on the same warrant number as the March arrest, Dickerson states that he believed he was making an arrest on a new warrant. This warrant

appeared to be an original, he had no knowledge of the outcome of the previous arrest, and he had no reason to question the validity of the warrant. He states that individuals are arrested for the same crimes all the time, and argues that he "reasonably but mistakenly concluded that the September warrant was valid," entitling him to qualified immunity.

Fischer states that on February 21, 2011, he was notified by Davis that an individual was living in Rains County who had not registered as a sex offender as he was required to do. Goodnight had applied for government housing and was denied because a criminal background check came back showing that he was a registered sex offender in Florida and had not registered in Texas.

Fischer's investigation showed that Goodnight had been registered in Florida but that this registration had expired in July of 2010. He learned that Goodnight told Florida officials he was planning to move to Indiana, but his registration in Indianapolis had been inactive since December of 2009. Instead of moving from Florida to Indiana, Goodnight had actually moved from Indiana to Florida and then from Florida to Texas.

Fischer states that he checked the information on the housing application and found two vehicles registered to the Goodnights. A review of records from the Department of Public Safety found that Goodnight had applied for his driver's license on February 8, 2011. Goodnight had seven days in which to comply with Texas' sex offender registration requirements. Fischer notes that the only way a person who has been registered as a sex offender in another state can live in Texas without registering is if the mandatory registration requirement has been removed, which is done by being registered for 25 years and successfully petitioning the court to have the requirement removed. Because Goodnight did not meet these requirements, Fischer presented an affidavit of probable cause to the justice of the peace for the issuance of an arrest warrant, which was done. Fischer states that he did not participate in the arrest and so Goodnight's only complaint against him is that he did not conduct a sufficient investigation prior to seeking the arrest warrant.

Randy Kirkpatrick states that one of his job duties was to ask deputies to serve active arrest warrants; if he became aware of an active warrant, he would notify a deputy to serve that warrant. He does not specifically recall the warrants for Goodnight's arrest but says that the records show that the March arrest was executed on a copy and the September arrest on the original. Kirkpatrick concedes that it is unclear why both the original and a copy were put in the active file, but once a person is arrested on a warrant and this warrant is cleared, there is nothing in the system to notify dispatch of a previous warrant. A reasonable officer could have concluded that the warrant was valid so Kirkpatrick contends that he is entitled to qualified immunity.

## Other Defenses

The Defendants contend that they are entitled to immunity under Article 62.008 of the Texas Code of Criminal Procedure for good faith conduct under the Texas Sex Offender Registration Act. This article provides in pertinent part that local law enforcement authorities are "immune from liability for good faith conduct under this subchapter." However, Goodnight does not raise any claims under state law in his amended complaint; hence, legal immunities existing under Texas law are not applicable in the present case.

Dickerson argues that he is entitled to absolute immunity because he was acting in compliance with a facially valid court order, noting that the September warrant was facially valid because it was the original. Finally, Fischer contends that the claims against him are barred by the statute of limitations because the only actions he took of which Goodnight complains were in February of 2011, but Goodnight did not add Fischer as a defendant in the lawsuit until his amended complaint of July 8, 2013.

## The Defendants' Summary Judgment Evidence

In their summary judgment evidence, the Defendants first attach a copy of Davis' affidavit, recounting the facts as set out in their motion. This affidavit includes Goodnight's registration papers dated March 7, March 8, and September 6, 2012, along with a criminal report from the U.S. Department of Justice. The report from the Department of Justice reflects that Goodnight registered

as a sex offender on December 14, 2008 with law enforcement officials in Tallahassee, Florida. The registry expiration is listed as "nonexp," indicating "non-expiring."

Davis' affidavit states that she learned that Goodnight had been registered as a sex offender in Florida but his registration expired in July of 2010. She also learned that Goodnight told Florida officials that he was moving to Indiana, but that he in fact moved to Texas.

Davis states that Goodnight came unexpectedly to her office and presented her with an email from Lt. Robert Hanna, an Indiana law enforcement officer. This email said that Goodnight was no longer required to register in Indiana. Davis told Goodnight that Hanna would have to contact her directly and that she, Davis, could not change Goodnight's status. Hanna did not call her, and around the time the lawsuit was filed, Davis called Hanna. He told her that Goodnight was no longer required to register in Indiana, but Davis states that after additional research, including resources from the Texas Department of Public Safety, she concluded that Goodnight would be required to register for life in Texas.

After affidavits from Dickerson, Fischer, and Kirkpatrick, recounting the facts as set out in the motion for summary judgment, the Defendants provide an affidavit from Anette Foster, the records custodian for Rains County, along with some records from the county. The first document is a copy of warrant 891EX11, dated March 3, 2011. This is the warrant which was executed in March of 2011. The warrant commands the arrest of Thomas Goodnight on charges of failure to comply with sex offender registration requirements. The Defendants also include a copy of the original warrant, which is the warrant executed in September 2011; these documents, exhibits E-1 and E-2, are identical except that the original warrant has the state seal on the top in color, while the copy has the state seal in black and white.

The probable cause affidavit supporting the warrant, which was executed by Fischer, states that on February 21, 2011, he was notified by Davis that Thomas Goodnight and his wife had applied for government housing but was rejected because Goodnight was a registered sex offender from Florida who had not registered in Texas. The criminal history from Florida reflected that Goodnight

was to register for life. However, Fischer says, he believes that Goodnight is residing in Rains County and has not updated his sex offender registration as required by law.

<h2 style="text-align:center;">Goodnight's Response to the Motion for Summary Judgment</h2>

In his response, Goodnight first takes issue with the assertion that the only way a person who has been registered as a sex offender in another state can live in Texas without registering is if the mandatory registration requirement has been removed. He points to an email from Davis to Lt. Hanna which says that she will "do some additional research on any possible conviction since that time here in Texas, and will also notify Florida of same. If found, I will notify you immediately. *If not, I will make sure that Mr. Goodnight is removed from the Texas registry*."

However, Goodnight states that in her affidavit, Davis says that "after additional research including resources at the Texas Department of Public Safety, I concluded as before that Mr. Goodnight was required to register in Texas for his lifetime." He asserts that this is a "contradiction."

Similarly, Goodnight points to Fischer's statement that the only way a person who has been registered in another state can live in Texas without registering is if the mandatory registration requirement has been removed. He contends that this is "double jeopardy" and that it shows that the March 2011 arrest was false because Hanna verified that Goodnight was no longer required to register in Indiana as of 2008. Thus, Goodnight asserts that Davis "made Plaintiff register when he was no longer required to do so."

Goodnight says that he "objects to qualified immunity" because a person who is drinking and driving, and kills three people, could argue that it was "mistaken judgment to drive," or a wife who thinks she sees her husband's car at a motel and breaks all the windows, only to find it was someone else's car, could argue that this was "mistaken judgment." He contends that the Indiana offense of "sexual misconduct with a minor (felony B) is not equivalent to the Texas offense of sexual assault with a child because the terms "misconduct" and "assault" mean very different things.

Next, Goodnight challenges Dickerson's statement that he, Goodnight, did not show him any Texas paperwork. He states that he showed Dickerson and a jailer named Bank a blue card showing that he had in fact registered in Rains County, but the officers told him to "work it out with the judge tomorrow." His wife had to get the county attorney's office to fax paperwork to the jail to get him released.

Goodnight goes on to argue that the Defendants have "admitted to the false warrant" by saying that the March 2011 arrest was based on a copy and the September 2011 arrest was based on the original. He states that this shows that the September arrest lacked probable cause in that the probable cause was "used on the March warrant." He complains that the Defendants failed to contact the Indiana Department of Corrections in February of 2011 and says that he has "proven that registering requirements no longer existed as of July 1, 2008, and warrants were issued and served in March 2011 and September 2011." Goodnight again contends that the fact that he was arrested twice on the same warrant is proof that the September arrest was "wrong and reckless, making it a false arrest, double jeopardy."

<u>Goodnight's Summary Judgment Evidence</u>

Goodnight's first exhibit is a letter dated February 21, 2013, from the Indiana Department of Corrections. This letter states that by operation of law, a sex offender is required to register for ten years after the last date of release from a prison facility, placement in a community transition program or community corrections program, or placement on parole or probation. In Goodnight's case, the registration requirement for Indiana ended on July 1, 2008.

The second exhibit is an email from Lt. Robert Hanna to Goodnight dated April 29, 2011. This email states that "Zachary's Law" was enacted on July 1, 1994, and on April 30, 2009, the Indiana Supreme Court handed down the ruling in *Wallace v. Indiana,* which was based on an *ex*

*post facto* appeal of the registration law. This ruling affected Goodnight's status by changing him to a 10-year registration requirement. As such, Goodnight's duty to register expired on July 1, 2008.[1]

Goodnight's third exhibit is a copy of email correspondence between D'Lyn Davis and Lt. Hanna. The first email, which is dated January 25, 2013, reads as follows:

> I am writing in regard to the above named sexual offender. I am the sexual offender registrar for Rains County Sheriff's Office in Emory, Texas.
>
> Mr. Goodnight is currently living here in Emory, Texas and has for quite some time. He is registered as a sexual offender with me. However, he continues to maintain a non-compliant status. In addition, I received a call from Sgt. Karen Johnston from Volusia County, Florida stating that Mr. Goodnight had fled back to Florida in December and had obtained an eight year Florida driver's license. Florida has filed on Mr. Goodnight previously for non-compliance with regard to registration duties and for carrying false identification. We have also arrested Mr. Goodnight here in Rains County Texas for non-compliance.
>
> Attached please find an email which Mr. Goodnight brought to me with your contact information stating that he was no longer required to register as a sexual offender in the State of Indiana. He was originally arrested by the Indianapolis Police Department 10/2/1996 for the charges of rape, CDC, and Sex Misc. FC.
>
> I would greatly appreciate your help in determining if indeed Mr. Goodnight has fulfilled his obligation on his adjudicated charges and no longer has the duty to register as a sexual offender. If you do not have the information, would you please point me in the direction of who to contact regarding Mr. Goodnight's status?

Lt. Hanna's response, dated January 25, 2008, reads as follows:

> Hello D'Lyn, from the information I have at this time Goodnight was convicted in Indiana of sexual misconduct with a minor 9/17/1997, was incarcerated in the Indiana Department of Corrections for this conviction until 07/01/1998. Upon release he had a duty to register for a ten year period expiring 07/01/2008. At this time with no further knowledge of any other convictions for registerable offenses Goodnight does not have a duty to register in Indiana. If you have additional information about subsequent sex crime convictions other than FTR could you please advise me. Thank you D'Lyn.

Davis replied on January 28, 2013, as follows:

> Thank you very much for this information. I will do some additional research on any possible convictions since that time here in Texas, and will also notify Florida of

---

[1] In *Wallace v. State*, 905 N.E.2d 371, 383-84 (Ind. 2009), the Indiana Supreme Court held that the Indiana sex offender registration act violated the state's prohibition on *ex post facto* laws because it imposed burdens which had the effect of adding punishment beyond that which could have been imposed when the crime was committed.

same. If found, I will notify you immediately. If not, I will make sure that Mr. Goodnight is removed from the Texas registry.

Goodnight's next exhibit is a letter from the office of the Rains County Attorney, addressed "to whom it may concern." This letter says that on March 5, 2011, Goodnight was charged with sex offender failure to register. The case was presented to the grand jury and no-billed on September 7, 2011.

The final exhibit is a copy of a "Texas Sex Offender registration program receipt." This apparently is the document which Goodnight says that he showed to Dickerson and Banks in September, and indicates that Goodnight registered with Davis on September 6, 2012.

The Defendants' Reply

In their reply to Goodnight's response, the Defendants state first that Goodnight's letter from the Indiana Department of Corrections and the email exchange between Davis and Hanna speak to Goodnight's registration obligations under Indiana law and not Texas law. Although Davis wrote that Goodnight may be removed from the registry, she concluded after research that Goodnight was required to register in Texas for life. Fischer arrived at the same conclusion.

The Defendants state that the letter from the Rains County Attorney's office was received after Goodnight's September arrest, showing that the sheriff's department did not know that Goodnight had been no-billed by the grand jury. The Defendants further maintain that the purported "blue card" is not proper summary judgment evidence because Goodnight tried to testify within his response that he showed the card to Dickerson. Even were the card proper summary judgment evidence, the Defendants state that it does not create a material fact issue because Dickerson was required to follow the facially valid warrant and not "be judge and jury during the arrest of the Plaintiff."

Finally, the Defendants contend that Goodnight is making an "improper collateral attack" upon the determination as to his registration requirements made by the Texas Department of Public Safety. Under Article 62.003 of the Texas Code of Criminal Procedure, the Department of Public Safety is responsible for determining whether an offense under the laws of another state contain

elements substantially similar to the elements of an offense under the laws of the State of Texas. An appeal of a determination made under this article must be brought in a district court of Travis County. Thus, the Defendants say, Goodnight would have to bring a claim against the Department of Public Safety in Travis County to contest the determination that the Indiana offense of Sexual Misconduct with a Minor (Felony B) is substantially similar to the Texas offense of Sexual Assault of a Child. Under Texas law, the offense of sexual assault of a child requires lifetime registration. Davis' affidavit states that she reasonably relied on the information furnished by the Department of Public Safety. Thus, the Defendants contend that Goodnight's continued arguments about the alleged impropriety of the registration requirements are not proper in this lawsuit.

## Goodnight's Sur-Reply

Goodnight filed a sur-reply entitled "Argumentative Facts." In this pleading, he argues that he was not convicted of a "violent offense" in Indiana, nor was he convicted of an offense against "a child." Instead, he says that he was convicted of an offense against "a minor." Goodnight argues that a "child" is under 14, while a "minor" is between the ages of 14 and 18. In addition, Goodnight states that "misconduct" is not a violent act, while "assault" is. Thus, he maintains that the Indiana law under which he was convicted is not substantially similar to the Texas offense of sexual assault of a child. Goodnight goes on to contend that he moved to Texas some two and a half years after his duty to register in Indiana had expired, so the Defendants are attempting to punish him again for an offense which has been completed since July 1, 2008. Goodnight argues that this is double jeopardy as well as cruel and unusual punishment.

Goodnight goes on to reiterate that his complaint concerns being arrested twice on the same warrant and being made to register despite the fact that his registration requirement expired long before he moved to Texas. He repeats his arguments about double jeopardy and his objections to the qualified immunity defense, and asks that the Court set the case for trial or rule in his favor.

13

## Legal Standards and Analysis

## Qualified Immunity

The primary defense raised by the Defendants is that of qualified immunity. The Fifth Circuit has explained that qualified immunity protects government officials from liability for civil damages to the extent that their conduct is objectively reasonable in light of clearly established law. *Crostley v. Lamar County, Texas*, 717 F.3d 410, 422 (5th Cir. 2013). When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To demonstrate the inapplicability of the defense, the plaintiff must satisfy a two-prong test. First, he must demonstrate that the defendants committed a constitutional violation under current law. Second, he must claim that the defendants' actions were objectively reasonable in light of the law that was clearly established at the time of the actions complained of. *Crostley*, 717 F.3d at 422, *citing Atteberry v. Nocona General Hospital*, 430 F.3d 245, 253 (5th Cir. 2005). These two prongs may be considered in either order.

The relevant question with regard to claims of false arrest is whether an officer was objectively unreasonable after taking into account the totality of circumstances at the time the arrest is made. *Crostley*, 717 F.3d at 423, *citing Freeman v. Gore*, 483 F.3d 404, 4011 (5th Cir. 2007). In this regard, the Supreme Court has explained that "qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protected all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011). In other words, even law enforcement officers who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995).

In this case, Goodnight challenges both the March and September arrests, but both of these arrests were carried out under facially valid warrants. The March arrest was made after the sheriff's department, acting on information received from the Texas Department of Public Safety, determined

that Goodnight's offense in Indiana was equivalent to an offense in Texas which requires registration for life. Under Texas law, the Texas Department of Public Safety is responsible for determining whether an offense under the laws of another state contains elements that are substantially similar to the elements of an offense under the laws of this state. Tex. Code Crim. Pro. art. 62.003. In this case, the Department of Public Safety determined that the offense committed by Goodnight was substantially similar to the offense in Texas of sexual assault of a child, which requires lifetime registration.[2] To the extent that Goodnight seeks to challenge this determination, he must do so in a state district court in Travis County, Texas, as provided by Article 62.003 of the Texas Code of Criminal Procedure.

The summary judgment evidence shows that based upon the Department's determination, Fischer concluded Goodnight was required to register in Texas for life, and secured an arrest warrant alleging that he had failed to do so. Due to an error, the original as well as a copy of this warrant were placed in his file. The copy of the warrant was executed in March, and Goodnight bonded out of jail.

---

[2]The Indiana law concerning sexual misconduct with a minor, which is in effect at the time of Goodnight's offense, sets out two ways in which the offense can be designated as a felony B. The first way is if a person at least 21 years of age who, with a child at least 14 but younger than 16, "performs or submits to sexual intercourse or deviate sexual conduct." Indiana Statute 35-42-4-9(a)(1) (effective June 30, 1996). The second way is if a person at least 18 years of age who, with a child at least 14 years of age but younger than 16, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or satisfy the sexual desires of either the child or the older person, and such offense is committed while using or threatening the use of deadly force or while armed with a deadly weapon. Indiana Statute 35-42-4-9(b)(2) (effective June 30, 1996). The Texas sex offender registry indicates that Goodnight was convicted under section (b) of the statute.

The Texas offense of sexual assault of a child prohibits a person from causing the penetration of the anus or sexual organ of a child by any means, the penetration of the mouth of a child by the sexual organ of the actor; or causing the sexual organ of a child to contact or penetrate the sexual organ, anus, or mouth of another person including the actor; or causing the anus of a child to contact the sexual organ, anus, or mouth of another person including the actor; or causing the mouth of a child to contact the anus or sexual organ of another person including the actor. The term "child" means a person under 17 years of age.

Although Goodnight states that he had documentation showing that his registration requirement in Indiana had expired, this does not affect his obligation to register in Texas. As noted above, the Indiana Supreme Court held that the sex offender registration requirement violated the *ex post facto* clause of the Indiana Constitution. The Texas Court of Criminal Appeals has reached the opposite result, holding that the sex offender registration requirements are not *ex post facto* because they are not punitive. *Rodriguez v. State*, 93 S.W.3d 60, 68 (Tex.Crim.App. 2002).

As the Defendants correctly argue, the registration laws of Indiana do not apply in Texas. The fact that his registration date in Indiana had expired has no bearing on the determination by the Texas Department of Public Safety that his offense was substantially similar to a Texas offense carrying a requirement of registration for life. Hence, Fischer executed the affidavit of probable cause with the good faith belief that Goodnight was required to update his sex offender registration and had not done so.

Undisputed evidence that an arrest was carried out under a facially valid arrest warrant satisfies the requirements of the Fourth Amendment and forecloses a §1983 claim for false arrest. *Baker v. McCollan*, 443 U.S. 137, 139 (1979). The Fifth Circuit has explained that "where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest; such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982). In this case, the existence of the facially valid warrant, based upon a good faith affidavit of probable cause, stands as a barrier to Goodnight's false arrest claim.

In order to overcome this barrier, Goodnight must show that the officers knowingly provided false information to secure the arrest warrant or that they gave false information in reckless disregard of the truth. *Freeman v. County of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000). He has not made such a showing. Goodnight's false arrest claim concerning the March 2011 arrest is without merit.

In addition, Goodnight has failed to overcome the qualified immunity defense for each individual defendant because he has not shown that the officers acted in an objectively unreasonable

manner. *See Longoria v. Texas*, 473 F.3d 586, 593 (5th Cir. 2006) (in evaluating claims of qualified immunity, the district court should consider the individual roles of the various defendants in the disputed incidents).

## The March Arrest

The summary judgment evidence shows that Davis learned from Sherry Burns that Goodnight was living in Rains County but had not registered as a sex offender in Texas, and she turned that matter over to Fischer. She relied on information from the Texas Department of Public Safety to determine that Goodnight was required to register for life in Texas, regardless of any requirements placed on him by the State of Indiana. Davis was not involved in either arrest of Goodnight. Her actions were objectively reasonable, entitling her to qualified immunity.

The summary judgment evidence shows that on February 21, 2011, Fischer was notified by Davis that an individual was living in Rains County who had not registered with her as a sex offender as was required. He determined that Goodnight had applied for a Texas drivers license on February 8, 2011, and had seven days from that date in which to register as a sex offender in Texas. Goodnight had not had the mandatory registration requirement removed. As a result, Fischer executed an affidavit of probable cause and obtained an arrest warrant. This affidavit did not contain false information or leave out any pertinent facts. Fischer acted in an objectively reasonable manner with regard to securing the warrant for Goodnight's arrest.

Fischer acknowledges that through an error, both the original arrest warrant and a copy were placed in Goodnight's file. The Fifth Circuit has held that negligent police work, leading to a wrongful arrest and detention, does not establish a constitutional violation. *See Simmons v. McElveen*, 846 F.2d 337, 339 (5th Cir. 1988); *accord McAllister v. Desoto County, Mississippi*, 470 Fed.Appx. 313, 2012 WL 1521642 (5th Cir., May 1, 2012) (affirming dismissal of false arrest lawsuit over the arrest of Connie Jo McAllister instead of Connie Faye McAllister); *Harris v. Payne*, 254 Fed.Appx. 410, 2007 WL 4105170 (5th Cir., November 19, 2007) (no constitutional claim stated for negligence resulting in an innocent person being arrested and held in jail for four months);

*Williams v. City of Amory, Mississippi*, 245 Fed.Appx. 334, 2007 WL 1048944 (5th Cir., April 5, 2007) (police negligence leading to wrongful arrest for reckless driving was at most negligent and thus insufficient to overcome the defense of qualified immunity).

In *Brown v. Byer*, 870 F.2d 975, 978-79 (5th Cir. 1989), by contrast, an arrest warrant was issued in the name of Tamie Brown, with a driver's license number matching that which had appeared on some fraudulent checks. The constable delivered the warrants to a deputy constable named Bracken, who altered them to bear the name of a person named Tammy Brown, who was not the person who had passed the bad checks. Bracken also changed other information on the warrants, including the driver's license number and the address of the suspect, as to match Tammy Brown, and added information describing the appearance and birthplace of Tammy Brown. These warrants were entered into the system and Tammy Brown was taken into custody. On appeal, the Fifth Circuit reversed the jury verdicts against the county sheriff and the constable, but upheld the jury verdict against Bracken, including the award of punitive damages.

In the present case, there is no showing that the erroneous placement of two copies of the same arrest warrant in Goodnight's file was anything other than negligence or carelessness. *See Kugle v. Shields*, 62 F.3d 395, 1995 WL 450219 (5th Cir., July 7, 1995). Goodnight has failed to set out a constitutional claim in this regard. His claim against Dickerson for the March arrest is foreclosed by the existence of the facially valid warrant and Dickerson is entitled to qualified immunity.

In his amended complaint, Goodnight alleges that in March and again in September, Randy Kirkpatrick told Dickerson about the warrants and that Dickerson then arrested him. Kirkpatrick's affidavit states that he has no specific recollection of the warrants for Goodnight's arrest, but that his duties included making requests to deputies to serve active warrants; he explains that if he became aware of an active warrant, his standard procedure was to notify a deputy to serve the warrant. This is consistent with Goodnight's allegation that Kirkpatrick told Dickerson to serve the warrant in March and September.

18

However, the summary judgment evidence does not show that Kirkpatrick acted in an objectively unreasonable manner, even if he erred in telling Dickerson to execute the warrant in September.  The original warrant was in the file and there was no way to tell that a copy of this warrant had been executed several months earlier; the summary judgment evidence shows that once a warrant was executed, it was cleared from the system.  Kirkpatrick had no duty to make an independent investigation into the validity of the warrant prior to asking Dickerson to execute it; the Fifth Circuit has held that arresting officers have no obligation to conduct an independent investigation of a warrant's validity.  *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272, 279 n.12 (5th Cir. 1992), *citing Baker*, 443 U.S. at 145-46; *see also Sanchez v. Swyden*, 139 F.3d 464, 468 (5th Cir. 1998).  Because Goodnight has not shown that Kirkpatrick acted in an objectively unreasonable manner, Kirkpatrick is entitled to qualified immunity.

### The September Arrest

The summary judgment evidence shows that Goodnight was arrested in September on the original of the warrant for which he was also arrested in March.  It is clear that an error was made in this regard; however, there is no showing that any of the named Defendants acted in an objectively unreasonable manner despite this mistake.

Neither Fischer nor Davis were involved in the September arrest.  Kirkpatrick apparently asked Dickerson to execute a facially valid warrant which was in Goodnight's file, and Dickerson did so.  Although this arrest was an error, it was reasonable for Kirkpatrick and Dickerson to conclude that probable cause existed to arrest Goodnight, based on the fact that an original arrest warrant remained in the file.

Goodnight asserts that he showed Dickerson his receipt showing that he had registered in Rains County, and the Court will assume that Goodnight's statement is true.  Even given this fact, however, Goodnight has not shown that Dickerson acted in an objectively unreasonable manner in carrying out the arrest warrant.  Dickerson had a facially valid arrest warrant, issued by a competent judicial authority, and had no duty to investigate the warrant's validity.  *Duckett*, 950 F.2d at 279.

It was objectively reasonable, even if mistaken, for Dickerson to rely on the arrest warrant rather than the document which Goodnight showed him. Thus, Kirkpatrick and Dickerson are entitled to qualified immunity for the September arrest.

Dickerson also asserts that he is entitled to absolute immunity because he executed a facially valid warrant supported by probable cause which was issued by a competent judicial authority. The Fifth Circuit has stated that law enforcement officers have absolute immunity when complying with facially valid court orders. *Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996). This contention is correct, and Dickerson is entitled to absolute as well as qualified immunity.

Fischer contends that the claims against him are barred by the statute of limitations because they accrued in February of 2011 but Goodnight did not raise them until his amended complaint of July 2013. The limitations period for civil rights actions in the state of Texas is two years. *Texas Clinical Labs Inc. v. Leavitt*, 535 F.3d 397, 407 (5th Cir. 2008). Goodnight offers nothing to show that the limitations period should be tolled or should relate back to the original complaint under Fed. R. Civ. P. 15(c); his response to the motion for summary judgment does not address the limitations defense in any way. The claims against Fischer are barred by the statute of limitations.

<u>Goodnight's Defenses</u>

Goodnight challenges the qualified immunity, giving examples of "someone drinking and driving, runs a red light and kills three people in a passing car. Does the drunk driver get qualified immunity because it was mistaken judgment to drive? Or a distressed wife thinks she sees her husband's car at a motel, breaks all the windows out then learns it was someone else's car. Does she get qualified immunity because it was mistaken judgment?" Goodnight's examples are misplaced because qualified immunity is a defense available only to government officials acting in the scope of their employment. Even if the people in his examples were government officials somehow acting in the scope of their employment, they would not be entitled to qualified immunity because the actions of drinking and driving or breaking out all of the windows in a car are objectively unreasonable and not simply mistakes in judgment. He has not shown that any of the defendants in

this case acted in an objectively unreasonable manner, even if these actions were mistaken; thus, he has failed to overcome the qualified immunity defense.

Goodnight also argues that he was subjected to "double jeopardy." The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767. 769 n.1 (1994). Specifically, the Clause protects only against multiple criminal punishments for the same offense; jeopardy describes the risk that is traditionally associated with a criminal prosecution. *Hudson v. U.S.*, 522 U.S. 93, 98-99 (1997) (citations omitted). In a jury trial, jeopardy attaches when the jury is empaneled and sworn, while in a bench trial, jeopardy attaches when the judge begins to receive evidence. *U.S. v. Stricklin*, 591 F.2d 1112, 1120 (5th Cir. 1979).

In this case, Goodnight complains that he was subjected to double jeopardy when he was arrested for a second time on charges for which he had previously been arrested, and for which he had been no-billed by the grand jury. His second arrest was not a "criminal punishment" within the meaning of the Double Jeopardy Clause, and jeopardy never attached from the first arrest, which was no-billed. His claim of double jeopardy is without merit.

Finally, Goodnight complains that he was subjected to "cruel and unusual punishment." The prohibition against cruel and unusual punishment is found in the Eighth Amendment, which applies only to post-conviction prisoners. *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). In any event, the fact that Goodnight was mistakenly arrested in September of 2011 does not amount to "punishment" as prohibited by the Fourteenth Amendment, much less cruel and unusual punishment as prohibited by the Eighth Amendment. *See, e.g., Hamilton v. Lyons*, 74 F.3d 99, 104 (5th Cir. 1996), *citing Bell v. Wolfish*, 441 U.S. 520, 535-38 (1979). Goodnight's claims are without merit.

<u>Conclusion</u>

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Securities and Exchange Commission v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994); *General Electric Capital Corp. v. Southeastern Health Care, Inc.*, 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. *First American Bank & Trust of Louisiana v. Texas Life Ins. Co.*, 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Caldas & Sons v. Willingham*, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. *Caldas*, 17 F.3d at 126-27.

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court added that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." *Little*, 37 F.3d at 1075.

The plaintiff must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims. *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). The district court has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996).

In this case, the pleadings and the summary judgment evidence show that there are no disputed issues of material fact and the Defendants are entitled to judgment as a matter of law. The Defendants' motion for summary judgment is meritorious, and it is accordingly

ORDERED that the Defendants' motion for summary judgment (docket no. 50) is hereby GRANTED and the above-styled civil action is DISMISSED with prejudice. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So ORDERED and SIGNED this 7th day of January, 2014.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE